UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRIVEWAY MAINTENANCE, INC.,

    Plaintiff,

v.                                Case No. 8:13-cv-1752-T-24 TGW

DDRM BARDMOOR SHOPPING
CENTER, LLC, and the unknown
assigns, successors in interest, trustees,
or any other party claiming by, through,
under, or against the foregoing,

    Defendant.
_____/

DDRM BARDMOOR SHOPPING
CENTER, LLC,

    Third Party Plaintiff,

v.

CONTROL BUILDING SERVICES, INC.,
CONTROL EQUITY GROUP, INC.,
EDWARD TUREN and NEAL TUREN,

    Third Party Defendants.
_____/

## **ORDER**

      This cause comes before the Court on Plaintiff's Motion to Remand (Doc. No. 9) and Defendant/Third Party Plaintiff's Motion to Remand (Doc. No. 31). Third Party Defendants Control Building Services, Inc., Control Equity Group, Inc., and Edward Turen oppose the

motions.[1]  (Doc. No. 25, 33[2]).  As explained below, the motions to remand are granted.

## I. Background

On April 1, 2013, Plaintiff Driveway Maintenance, Inc. ("DMI") filed suit against Defendant DDRM Bardmoor Shopping Center, LLC ("DDRM") in state court regarding DDRM's alleged failure to pay DMI for labor, materials, and equipment that DMI furnished on November 16, 2012.  (Doc. No. 1-3).  In response, on May 22, 2013, DDRM filed a third party complaint against Third Party Defendants Control Building Services, Inc. ("CBS"), Control Equity Group, Inc. ("CEG"), Neal Turen, and Edward Turen, in which DDRM alleges that Third Party Defendants perpetrated a scheme to misappropriate funds that were supposed to be used to pay many vendors, including DMI.  (Doc. No. 1-3).

Specifically, DDRM alleges the following in its Third Party Complaint: DDRM is partially owned by DDR Corp. ("DDR").  DDR and Oxford Building Services, Inc. ("Oxford") entered into a service agreement, wherein Oxford agreed to coordinate the contracting and payment of vendors that performed work at DDR's properties.  Thus, Oxford acted as a conduit through which DDR would pay for the vendors' services, whereby vendors would invoice Oxford and Oxford, in turn, would invoice DDR for the underlying vendors' invoices.  DDRM alleges that it was an intended third party beneficiary of the service agreement.

---

[1]Third Party Defendant Neal Turen did not file a specific response to the motions to remand, but he appears to argue in other documents that this case is related to Oxford's pending bankruptcy case, which is the basis for Third Party Defendants' removal of this case to this Court. (Doc. No. 34, p. 20).

[2]In Third Party Defendants' August 8, 2013 opposition brief (Doc. No. 33), they refer to two other documents (Doc. No. 28, 29), which this Court considered in conjunction with the motions to remand to the extent that the documents discussed "related to" jurisdiction.

CBS guaranteed Oxford's performance under the service agreement. CEG is the parent company of CBS. Edward Turen is the Chairman, CEO, and principal shareholder of CEG and CBS, and he is also the CEO and a principal shareholder of Oxford. Neal Turen is the Executive Vice President of CEG and CBS, and he is the President and a principal shareholder of Oxford.

DDRM alleges that Third Party Defendants perpetrated a scheme to misappropriate over $11 million in funds that were supposed to be used to pay vendors, including DMI. Eventually, the scheme collapsed, and DDR sent auditors to Oxford, pursuant to the service agreement. However, Oxford became insolvent and declared bankruptcy in February of 2013. Thereafter, DDRM filed suit against Third Party Defendants, asserting the following claims: Breach of Guaranty Agreement against CBS (Count I), Tortious Interference with Contract against all Third Party Defendants (Count II), Conversion against CEG, Edward Turen, and Neal Turen (Count III), Fraud against CEG, Edward Turen, and Neal Turen (Count IV), Civil Conspiracy against all Third Party Defendants (Count V), and Indemnity against all Third Party Defendants (Count VI).

On July 5, 2013, CBS, CEG, and Edward Turen removed this case to this Court, arguing that pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 1452(a), this Court has subject matter jurisdiction over this case, because this case is related to Oxford's bankruptcy case.[3] (Doc. No. 1). In response, DMI and DDRM filed the instant motions to remand.

---

[3] Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1452(a) provides, in relevant part, that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

**II. Motions to Remand**

In its motion to remand, DDRM argues that remand is required, because DDRM's third party complaint is not sufficiently related to Oxford's bankruptcy case such that it could be said to support subject matter jurisdiction under 28 U.S.C. § 1334(b). There have been several state court cases removed to federal court based on third party complaints against CEG, CBS, and the Turens as a result of the alleged misappropriation scheme. The federal courts that have addressed the motions to remand in those cases have concluded that the third party complaints were not sufficiently related to Oxford's bankruptcy case and that remand was required. See Joseph McCormick Construction Co., Inc. v. DDR Corp., 2013 WL 4811193 (W.D. Pa. Sept. 9. 2013); Driveway Maintenance, Inc. v. DDR Southeast Clearwater Development, LLC, 2013 WL 5408242 (M.D. Fla. Sept. 25, 2013); T & K Asphalt Services, Inc. v. DDRC Gateway, LLC, 2013 WL 5550512 (D. Mass. Oct. 8, 2013); Thomas Suddarth & Son Asphalt Paving Co., Inc. v. DDR Corp., 1:13-cv-232 (W.D. Pa. Aug. 30. 2013)[4]; Ace Asphalt of Arizona v. DDR Corp., (D. Ariz. Aug 28, 2013)[5].

The Eleventh Circuit has adopted the Pacor test for determining whether a civil proceeding is sufficiently related to bankruptcy, such that federal jurisdiction exists over the civil proceeding:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being

---

[4] The Thomas Suddarth case was filed as supplemental authority in this case at Document Number 39-1.

[5] The Ace Asphalt case was filed as supplemental authority in this case at Document Number 38-1.

> administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." We join the majority of the circuits that have adopted the Pacor formulation.

Matter of Lemco Gypsum, Inc., 910 F.2d 784, (11th Cir. 1990)(quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

In the instant case, CEG, CBS, and Edward Turen make the following arguments regarding the third party complaint being related to Oxford's bankruptcy:

> [T]he outcome of DDRM's third-party claims against the Removed Defendants could conceivably affect the Oxford Bankruptcy in a number of relevant ways. To begin with, if DDRM recovers against the Removing Defendants on either the guaranty executed by Removing Defendant CBS or against the Removing Defendants for causing the alleged breaches of Oxford, two things may happen. First, to the extent that DDRM recovers against the Removing Defendants, the $11 million claim of DDR Corp. against Oxford will be reduced proportionately. . . . In turn, and as a result of any such recovery by DDRM against the Recovering Defendants, the Recovering Defendants' contingent claims against Oxford for subrogation, indemnity and/or contribution will ripen. Thus, Oxford will be subject to additional claims from non-debtor third parties as a result of the outcome of this dispute thereby affecting the estate both in terms of value and administration. Accordingly, this action is more than sufficiently "related to" the Oxford Bankruptcy thereby vesting this Court with jurisdiction pursuant to 28 U.S.C. § 1334(b).

(Doc. No. 28, p. 6-8; Doc. No. 29, p. 6-8). This Court recently rejected this argument in a related case, Driveway Maintenance, Inc. v. DDR Southeast Clearwater Development, LLC, 2013 WL 5408242 (M.D. Fla. Sept. 25, 2013), stating:

> Upon careful consideration, the Court does not find that the third-party claims are related to the Oxford bankruptcy case. In the Court's

> view, DDR's third-party claims do not attempt to hold the Third–Party Defendants liable for Oxford's actions. Rather, this Court finds that the third-party claims are independent of, and unrelated to, Oxford's alleged misconduct. Furthermore, the Third–Party Defendants did not provide the Court with any support regarding their potential subrogation, indemnification, or contribution claims against Oxford if they are found liable to DDR. Instead, the Third–Party Defendants have proffered conclusory assertions, speculative at best, regarding such potential claims. Although subrogation, indemnification, or contribution claims may arise once a determination has been rendered in state court, at this juncture, the Court is not inclined to speculate as to the merits of the Third–Party Defendants' potential claims against Oxford.

Id. at * 7. Likewise, the court in T & K Asphalt Services rejected the third party defendants' "related to" jurisdiction arguments, stating:

> The only basis to find related-to jurisdiction is the possibility that Third–Party Defendants *may* have claims for indemnity against Oxford. Oxford itself is not a party to this action and the only claims arise under state law. Although CBS is the guarantor for Oxford's obligations in the Services Agreement, there is no contractual provision for indemnity or contribution. It is unclear that Third–Party Defendants will even have valid indemnity claims against Oxford: Defendant's claims against Third–Party Defendants are based on their personal wrongdoings and Third–Party Defendants have not explained the basis for a right to indemnity.
>
> In sum, Third–Party Defendants have failed to meet their burden to show that this action is "related to" the Oxford bankruptcy. The connection of this case to the Oxford Bankruptcy is tenuous at best and the fact that Third–Party Defendants might seek indemnity or contribution in the future is far too insubstantial a basis upon which to find jurisdiction. Consequently, this court lacks subject matter jurisdiction over this action.

2013 WL 5550512, at * 3.

This Court is mindful that "removal statutes are construed narrowly" and that "uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095

(11th Cir. 1994). Furthermore, this Court is persuaded by the reasoning of the five courts that have already addressed the specific issue raised in this case and have found remand to be required.

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)  Plaintiff's Motion to Remand (Doc. No. 9) is **GRANTED**.

(2)  Defendant/Third Party Plaintiff's Motion to Remand (Doc. No. 31) is **GRANTED**.

(3)  The Clerk is directed to terminate all pending motions, remand this case back to state court, and then to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 17th day of October, 2013.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record